UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL F. HARRISON, | No.  2:12-cv-2000 KJM CKD P |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| D. DeBOARD, et al., | |
| Defendants. | |

I.  Introduction

    This pro se prisoner civil rights action pursuant to 42 U.S.C. § 1983 proceeds on the complaint filed July 31, 2013 against defendants DeBoard and Lopez.[1]  (ECF No. 1.)  Plaintiff claims that defendants were deliberately indifferent to his safety when they failed to protect him from other inmates, thus violating the Eighth Amendment prohibition against cruel and unusual punishment.

    Before the court is defendants' April 25, 2014 motion for summary judgment.  (ECF No. 84.)  Plaintiff has filed an opposition.  (ECF No. 90.)  Having carefully reviewed the record and the applicable law, the undersigned will recommend that defendants' motion be denied.

---

[1] Plaintiff's claims against two other defendants were severed and are the subject of a separate action.  (ECF No. 46.)

1

1  II.  Summary Judgment Standard

2          Summary judgment is appropriate when it is demonstrated that there "is no genuine

3  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

4  Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by

5  "citing to particular parts of materials in the record, including depositions, documents,

6  electronically stored information, affidavits or declarations, stipulations (including those made for

7  purposes of the motion only), admissions, interrogatory answers, or other materials. . ."  Fed. R.

8  Civ. P. 56(c)(1)(A).

9          Summary judgment should be entered, after adequate time for discovery and upon motion,

10  against a party who fails to make a showing sufficient to establish the existence of an element

11  essential to that party's case, and on which that party will bear the burden of proof at trial.  See

12  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an

13  essential element of the nonmoving party's case necessarily renders all other facts immaterial."

14  Id.

15          In the endeavor to establish the existence of a factual dispute, the opposing party need not

16  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

17  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

18  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

19  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

20  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

21  amendments).

22          In resolving the summary judgment motion, the evidence of the opposing party is to be

23  believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the

24  facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475

25  U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

26  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

27  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

28  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

2

1   simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

2   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

3   'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

4   III.  <u>Plaintiff's Allegations</u>

5        In his complaint, plaintiff alleges as follows:

6        On the morning of March 12, 2009, three inmates returned from breakfast and came to

7   plaintiff's cell, where they began loudly threatening and cursing at plaintiff as he stood in the cell

8   doorway.  (ECF No. 1 at 8.)  They had been trying to intimidate plaintiff into smuggling drugs for

9   them.  (<u>Id.</u>)  As the yelling and threats continued, plaintiff looked over at Correctional Officers

10  DeBoard and Lopez, who were at their desk about 35 feet away.  (<u>Id.</u>)  Plaintiff saw that both

11  were watching the inmates' verbal assault, which went on for at least two minutes, but did not

12  stop it.  (<u>Id.</u>)

13       One inmate hit plaintiff in the face, busting his lip, and hit plaintiff at least three more

14  times in the jaw, nose, and eye.  (<u>Id.</u>)  Plaintiff fell down, and the three inmates punched and

15  kicked him while he was on the ground.  (<u>Id.</u> at 8-9.)  This attack went on for approximately two

16  minutes.  (<u>Id.</u> at 9.)  Afterward, the three inmates walked past DeBoard and Lopez, back to their

17  cells.  (<u>Id.</u>)  DeBoard and Lopez laughed and gave each other a "high five" knuckle touch.  (<u>Id.</u>)

18       Plaintiff went back to his cell, packed his property, and asked DeBoard to move him out

19  of the building, but he refused.  (<u>Id.</u>)  Plaintiff waited until the next shift, then told non-defendant

20  Correctional Officer Simpson about the attack.  (<u>Id.</u>)  Simpson moved plaintiff to a locked shower

21  and reported the incident.  (<u>Id.</u>)  Plaintiff was placed in administrative segregation pending

22  investigation of the assault.  (<u>Id.</u> at 10.)

23  IV.  <u>Facts</u>

24       The following facts are undisputed[2]:

25       Plaintiff is a state prisoner who, at all relevant times, was housed at Mule Creek State

26  Prison.  On March 12, 2009, Correctional Officers D. DeBoard and R. Lopez worked at MCSP on

27

28  _____
    [2] <u>See</u> ECF No. 84-1 (Defendants' Statement of Undisputed Facts) and ECF No. 90 at 29-31
    (Plaintiff's Statement of Disputed Facts).

1    second watch (from 6:00 a.m. to 2:00 p.m.).  They were assigned as floor officers responsible for

2    maintaining security in Facility A, Building 3.

3          Sometime around 8:00 a.m., DeBoard and Lopez were overseeing Building 3's inmates

4    returning to the housing unit from breakfast.  The officers were at the podium in the center of the

5    dayroom.

6          At some point during the third watch (from 2:00 to 10 p.m.), plaintiff told Facility A staff

7    that he had been assaulted by three inmates from his housing unit around 10:00 a.m. that morning.

8    Plaintiff told correctional staff that he feared for his safety and wanted to be rehoused in another

9    unit.  Medical staff examined plaintiff and noted injuries to his face and mouth.  Based on

10   plaintiff's allegations and injuries, plaintiff was removed from Facility A, Building 3 and

11   rehoused in the prison's administrative segregation unit for his safety while the allegations were

12   investigated.

13         That day, Correctional Officer Simpson worked at MCSP on third watch.  He was

14   assigned to conduct a fact-finding inquiry into plaintiff's allegations.  Officer Simpson

15   interviewed plaintiff that evening in connection with the allegations and prepared a memorandum

16   that summarized the results of his interview.  After describing plaintiff's account of the attack by

17   three inmates, the memorandum continues: "Harrison stated this went on without the floor

18   officers [sic] detections."  (ECF No. 84-6 at 4.)  Plaintiff's handwritten name appears at the top of

19   the first page of the memorandum, and his handwritten initials at the second page in the lower

20   right hand corner.  (Id. at 4-5.)  Afterwards, Officer Simpson forwarded the memorandum to his

21   supervisor for review.

22   V.  Analysis

23         The Eighth Amendment's prohibition on cruel and unusual punishment imposes on prison

24   officials, among other things, a duty to "take reasonable measures to guarantee the safety of the

25   inmates."  Farmer v. Brennan, 511 U.S. 825, 832 (1991) (quoting Hudson v. Palmer, 468 U.S.

26   517, 526-27 (1984)).  "'[P]rison officials have a duty ... to protect prisoners from violence at the

27   hands of other prisoners.'"  Id. at 833.  "[A] prison official violates the Eighth Amendment when

28   two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently

4

1    serious[.]'  For a claim . . . based on a failure to prevent harm, the inmate must show that he is

2    incarcerated under conditions posing a substantial risk of serious harm." Id. at 834.  Second, "[t]o

3    violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently

4    culpable state of mind' ... [T]hat state of mind is one of 'deliberate indifference' to inmate health

5    or safety." Id.  The prison official will be liable only if "the official knows of and disregards an

6    excessive risk to inmate health and safety; the officials must both be aware of facts from which

7    the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

8    the inference." Id. at 837.

9         Here, defendants argue that plaintiff has not created a "genuine" dispute of fact as to

10   whether DeBoard and Lopez witnessed the attack on plaintiff, or had any knowledge that plaintiff

11   was at risk of harm on the morning of March 12, 2009.  Plaintiff and defendants give different

12   accounts of these events, and defendants acknowledge that credibility issues must be resolved by

13   the factfinder at trial.  However, defendants contend that the instant motion is governed by an

14   exception to the general rules of summary judgment, created by the Supreme Court in Scott v.

15   Harris, 550 U.S. 372 (2007).

16        In Scott, the Supreme Court considered whether there was a genuine dispute of material

17   fact as to whether respondent, a motorist fleeing a pursuing police car, was driving in such a way

18   as to endanger human life.  An "added wrinkle" was that the chase had been caught on videotape

19   (id. at 378), and the tape "so utterly discredited" respondent's version of events "that no

20   reasonable jury could have believed him." Id. at 380.  The Court held: "When opposing parties

21   tell two different stories, one of which is blatantly contradicted by the record, so that no

22   reasonable jury could believe it, a court should not adopt that version of the facts for purposes of

23   ruling on a motion for summary judgment." Id.  See Rutter Group Practice Guide: Federal Civ.

24   Proc. Before Trial, Calif. & 9th Cir. Eds., Chap. 14D § 14:154.5 (2014) (citing Scott for

25   proposition that, where party's claims of disputed evidence are not simply implausible, but are

26   directly and irrefutably contradicted by evidence that clearly shows there is no genuine issue of

27   material fact, summary judgment is proper).

28   /////

5

Defendants argue that there "is no evidence (aside from the complaint's unsupported allegations) that either Defendant knew" that plaintiff faced a substantial risk of harm on the morning of March 12, 2009.  (ECF No. 84-1.)  On the contrary, defendants assert, when Officer Simpson interviewed plaintiff  later that day, plaintiff stated that the assault was unseen by correctional staff, then signed and initialed Simpson's memorandum stating as much.  Defendants argue that plaintiff's "current rendition of events" is blatantly contradicted by the record and thus, under <u>Scott</u>, does not establish a genuine dispute of fact as to whether defendants knowingly disregarded a substantial risk to plaintiff.

In response, plaintiff contends that he never signed Simpson's memorandum and suggests that his signature and initials were forged.  (ECF No. 90 at 4-5.)  He submits a sworn declaration stating that defendants watched the attack on him and did nothing to stop it.  (<u>Id.</u> at 32-35.)  According to plaintiff, the disputed facts include:

> 1. Whether Defendants [DeBoard and Lopez] witnessed plaintiff being assaulted and battered on 3-12-09 . . .
>
> 2. Whether [defendants] witnessed three inmates loudly cussing at plaintiff in front of his cell door in the day room on 3-12-09 . . .
>
> 3. Whether Plaintiff went over to [defendants] directly after the 3-12-09 Assault and Battery and asked them why they did not stop the assault and battery.
>
> 4. Whether C/O Simpson forged . . . state documents which untruthfully stated that plaintiff told him that no officers saw the assault and battery on 3-12-09.
>
> . . .
>
> 7. Whether it is possible for a assault and battery which occurred in view of the tower officer and floor officers [to] go undetected by all officers in building, considering the location of the assault and battery.
>
> . . .
>
> 10.  Whether or not [defendants] had a motive to lie about the [incident] on 3/12/09.
>
> 11. Whether or not corroborating evidence proves that [defendants] are credible witnesses.

(ECF No. 90 at 30-31.)

1    Clearly, Scott would apply in the instant case if a video camera had recorded the attack on

2  plaintiff and defendants' behavior during that time.  See Iko v. Shreve, 535 F.3d 225, 230 (4th

3  Cir. 2008) (applying Scott where "the record contains an unchallenged videotape capturing the

4  events in question").  However, the court has not found – and defendants do not cite – a case in

5  which the Scott exception has been applied to a party's prior, unsworn admission as documented

6  in a report.  While such an admission makes plaintiff's later, contradictory statements

7  implausible, it does not render them indisputably false.

8    Moreover, the court need not credit plaintiff's self-serving contention that Simpson forged

9  his signature on the report, in order to find a genuine dispute of material fact.  Even if plaintiff

10  stated on that day that no correctional staff witnessed the assault, and signed a report including

11  this statement, these events go to his credibility and should be weighed by the trier of fact.

12    Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary

13  judgment (ECF No. 84) be denied.

14    These findings and recommendations are submitted to the United States District Judge

15  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

16  after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are

19  advised that failure to file objections within the specified time may waive the right to appeal the

20  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21  Dated:  February 3, 2015

22  _____
      CAROLYN K. DELANEY
23    UNITED STATES MAGISTRATE JUDGE

24

25

26

27  2 / harr2000.sj

28

7